Hany Gonzalez, Esq., State Bar No. 335677
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana CA 92705
(714) 617-8358
(714) 597-6559 facsimile
hgonzalez@higbeeassociates.com

*Attorney for Plaintiff,*
JULIAN ELLIOTT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN ELLIOTT,<br><br>                             Plaintiff,<br><br>v.<br><br>MAX AMINI; ABSTRACTION MEDIA INC.; and DOES 1 through 10 inclusive,<br><br>                            Defendants. | Case No. 2:21-cv-4364<br><br>**COMPLAINT FOR**<br><br>**(1) COPYRIGHT INFRINGEMENT**<br><br>**(2) UNAUTHORIZED ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION** |

Plaintiff Julian Elliott, for his Complaint against Defendants Max Amini, Abstraction Media Inc. and DOES 1 through 10 inclusive, alleges as follows:

## JURISDICTION AND VENUE

1.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 *et seq* and 17 U.S.C. § 1202.

2.      This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

3.      This court has personal jurisdiction over Defendants because Defendants' acts of infringement complained of herein occurred in the state of

California, Defendants' acts of infringement were directed towards the state of California, Defendants caused injury to Plaintiff within the state of California, and Defendants have a physical presence in the state of California.

4.     Venue in this judicial district is proper under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which substantial part of the acts and omissions giving rise to the claim occurred.

## PARTIES

5.     Plaintiff Julian Elliott ("Elliott") is an individual and professional photographer.

6.     Defendant Max Amini ("Amini") is an individual who, on information and belief, resides in California.

7.     Defendant Abstraction Media Inc. is a California corporation with a business address of 1516 N Fairfax Ave. West Hollywood, CA, 90046.

8.     Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and for that reason, sues such Defendants under such fictitious names. Plaintiff is informed and believes and on that basis alleges that such fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the conduct of said Defendants. Plaintiff will seek to amend the complaint when the names and capacities of such fictitiously named Defendants are ascertained. As alleged herein, "Defendant" shall mean all named Defendants and all fictitiously named Defendants.

## FACTUAL ALLEGATIONS

9.     Julian Elliott is an award winning professional freelance landscape and travel photographer.

10.     Elliott's stock photography and footage work can be found in image libraries such as Getty, Robert Harding, AGE Fotostock, and Alamy. Elliott also has his own stock image library.

11.    Outside the world of stock photography and footage, Elliott has done various commissions for some of the UK's leading photography magazines such as *Digital SLR User Magazine*, *Digital Camera Magazine*, and *Photo Plus*.

12.    In October 2015, one of Elliott's photographs was chosen as the winner of the Countryside is a GREAT section of the Landscape Photographer of the Year competition held in conjunction with Visit Britain – The British Tourist Authority.

13.    In 2016, the British Tourist Authority commissioned Elliott to create a series of time lapse sequences for some of the major cities in the UK.

14.    In October 2017, Elliott's photograph of Big Ben and the Shard entitled "A Shard of Ben" was commended in the Urban View category of the Landscape Photographer of the Year.

15.    Elliott's photography and stock footage has been sold across the world in nearly 40 countries through agencies such as Getty Images. His photographs have been used as magazine spreads for commercial and product sales. His stock footage has been used by corporate websites and have been part of several TV broadcasts.

16.    Elliott is the sole author and exclusive rights holder to one photograph of a panoramic view of central London ("London Photograph").

17.    Attached hereto as Exhibit A is a true and correct copy of the Edwinson Photograph.

18.    Elliott registered the London Photograph with the United States Copyright Office. The London Photograph is registered under Registration Number VA 2-148-459.

19.    Defendant Amini is an actor, comedian and producer. As an actor, Amini has over 50 film and television credits, including NBC's *Heroes*, regular appearances on Comedy Central's *Mind of Mencia*, a leading role in the feature

film *Beyond Paradise*, and a reoccurring role in the Netflix series *Real Rob* with Rob Schneider.

20.    Amini launched his stand-up comedy career in 2002. He quickly built a reputation as one of the fastest growing comedians in the comedy circuit. In 2006, he got his residency at the world-famous Laugh Factory in Hollywood.

21.    Shortly after attaining his residency, Amini embarked on his first comedy tour: "Exotic Imports." He has since then taken his tours internationally, selling out state of the art theatres around the world in USA, Canada, UK, Australia, Europe, and The Middle East. To accommodate his growing fan base, Amini often adds additional shows to his world tours.

22.    Amini also has a strong online presence. His YouTube channel has garnered over 10 million views as of today, making him one of the most influential figures of this age.

23.    Amini maintained an Eventbrite page, https://www.eventbrite.com/o/abstraction-media-8970007578 ("Eventbrite Page").

24.    Eventbrite is an event management and ticketing website. The service allows its users to create, browse, and promote local events.

25.    Eventbrite charges a fee to the event organizers for online ticketing services, unless the event is free.

26.    Elliott is informed and believes Amini promoted his events on his Eventbrite Page in order to register attendees, track attendance, and sell tickets online or at the door.

27.    On or about June 7, 2019, Elliott discovered the London Photograph being used by Amini to promote two of his "Max Amini Live: Featuring Enissa Amani" shows: one show at Logan Hall in London and a second show at Dancehouse in Manchester on his Eventbrite Page. Ticket prices for both shows each sold between £27.24 and £59.22 GBP (approximately between $37.98 and $82.57 USD).

28.     Attached hereto as Exhibit B are true and correct screenshots of the use of the London Photograph on Amini's Eventbrite Page.

29.     Amini also maintains an Instagram page, https://www.instagram.com/maxcomedian/ under the handle @maxcomedian ("Instagram Page").

30.     Elliott is informed and believes Amini markets his services and events on his Instagram Page in order to attract user traffic and drive customer revenue.

31.     On or about June 7, 2019, Elliott discovered the London Photograph being used by Amini on his Instagram Page to promote and sell tickets to his "Max Amini Live: Featuring Enissa Amani" show at Logan Hall in London.

32.     The London Photograph contains a unique watermark bearing Elliott's name, "Julian Elliott/ Hotspot Media."

33.     Elliott also noticed that Amini had cropped off a portion of the watermark from the London Photograph as used in the post on Amini's Instagram Page.

34.     Amini also added his own watermark "Max Amini Live" to the London Photograph and included his show and ticket sales information, as well as a link to his website, www.maxamini.com ("Website").

35.     Elliott did not give Amini permission to use the London Photograph on his Instagram Page, crop off a portion of Elliott's proprietary watermark, and add his own watermark.

36.     Attached hereto as Exhibit C is a true and correct screenshot of the use of the London Photograph on Amini's Instagram Page.

37.     Amini also maintains a Facebook page, https://www.facebook.com/MaxAmini ("Facebook Page").

38.     Elliott is informed and believes Amini markets his services and events on his Facebook Page in order to attract user traffic and drive customer revenue.

39.     On or about June 7, 2019, Elliott discovered the London Photograph being used by Amini on his Facebook Page to promote and sell tickets to his "Max Amini Live: Featuring Enissa Amani" show at Logan Hall in London.

40.     Elliott also noticed that Amini had cropped off a portion of the "Julian Elliott/ Hotspot Media" watermark from the London Photograph as used in the post on Amini's Facebook Page.

41.     Amini also added his own watermark "Max Amini Live" to the London Photograph and included his show and ticket sales information, as well as a link to his website, www.maxamini.com ("Website").

42.     Elliott did not give Amini permission to use the London Photograph on his Facebook Page, crop off a portion of Elliott's proprietary watermark, and add his own watermark.

43.     Attached hereto as Exhibit D is a true and correct screenshot of the use of the London Photograph on Amini's Instagram Page.

44.     On or about August 15, 2019, Elliott also discovered the London Photograph being used by Amini on his Instagram Page to announce that comedian Shazia Mirza would be an additional guest at his "Max Amini Live: Featuring Enissa Amani" show at Logan Hall in London. The caption of the post on Amini's Instagram Page using the London Photograph also promoted the show and urged Instagram users to purchase tickets.

45.     Elliott also noticed that Amini had airbrushed buildings in the London Photograph so that they were no longer visible.

46.     Elliott also noticed that Amini had cropped off or airbrushed the "Julian Elliott/ Hotspot Media" watermark entirely from the London as used in the post on Amini's Instagram Page.

47.     Elliott did not give Amini permission to use London Photograph on his Facebook Page, crop off a portion of Elliott's proprietary watermark, and alter the photograph.

48. Attached hereto as Exhibit E is a true and correct screenshot of the continued use of the London Photograph on Amini's Instagram Page.

49. On or about April 29, 2021, Elliott discovered the London Photograph continued to be displayed by Amini on his Instagram Page to announce that comedian Shazia Mirza would be an additional guest at his "Max Amini Live: Featuring Enissa Amani" show at Logan Hall in London on Amini's Instagram Page.

50. Attached hereto as Exhibit F is a true and correct screenshot of the continued use of the London Photograph on Amini's Instagram Page.

51. Elliott is informed and believes that Amini is the sole shareholder of Defendant Abstraction Media, Inc.

52. Elliott is informed and believes, that Amini manages all aspects of his comedy career through Defendant Abstraction Media, Inc., and that all acts alleged in this complaint as to Amini are also attributable to Defendant Abstraction Media, Inc.

53. Prior to the filing of this Complaint, Elliott made numerous attempts to amicably resolve the matter. In response to Elliott's attempt to amicably resolve the matter without resorting to litigation, Amini's counsel made several rude remarks, such as "THIS IS NOT IMPORTANT TO US" and "DON[']T WASTE MY TIME."

54. In no event did Elliott offer Amini a license to use the London Photograph in any manner.

55. Elliott is informed and believes Amini created unauthorized copies of the London Photograph.

56. Elliott is informed and believes Amini cropped Elliott's watermark on the London Photograph in some of his posts in an effort to conceal his infringing conduct.

57.     Elliott is informed and believes Amini put his own watermark on the London Photograph on some of his posts in an effort to falsely claim ownership of the London Photograph.

58.     Elliott is informed and believes Amini uploaded the London Photograph to Amini's Eventbrite Page.

59.     Elliott is informed and believes Amini uploaded the London Photograph to Amini's Instagram Page.

60.     Elliott is informed and believes Amini uploaded the London Photograph to Amini's Facebook Page.

61.     Elliott has made several attempts to settle this case prior to the filing of this Complaint.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 101** *et seq.*

62.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63.     Plaintiff did not consent to, authorize, permit, or allow in any manner the said use of Plaintiff's unique and original London Photograph.

64.     Plaintiff is informed and believes and thereon alleges that said Defendants willfully infringed upon Plaintiff's copyrighted London Photograph in violation of Title 17 of the U.S. Code, because, *inter alia*, the Defendants knew or should have known that they did not have a legitimate license for the London Photograph.

65.     As a result of Defendants' violation of Title 17 of the U.S. Code, Plaintiff is entitled to actual damages and profits pursuant to 17 U.S.C. §504(b), or statutory damages in an amount up to $150,000.00 for each infringement pursuant to 17 U.S.C. § 504(c).

66.     As a result of the Defendants' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable

attorney's fees and costs pursuant to 17 U.S.C § 505 from Defendant.

67.     Plaintiff is also entitled to injunctive relief to prevent or restrain infringement of her copyright pursuant to 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION
## FALSIFICATION, REMOVAL AND ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION
## 17 U.S.C. § 1202

68.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69.     Defendants intentionally falsified, removed, and/or altered copyright management information related to the London Photograph with the intent to induce, enable, facilitate, or conceal its infringement of the London Photograph. Specifically, Defendants illegally downloaded the London Photograph with watermarks containing copyright management information, cropped the copyright management information, and incorporated his own watermark on the London Photograph to post on social media.

70.     Defendants' conduct was knowing and intentional because Defendants knew that they were not the copyright holder in the London Photograph, that Defendants had not licensed the London Photograph for use in the social media advertisements, and Defendants knowingly incorporated their own watermark in order to conceal their infringing conduct.

71.     Defendants' conduct constitutes a violation of 17 U.S.C. § 1202(a), and 1202(b).

72.     Defendants' falsification, removal and/or alteration of that copyright management information was done without Plaintiff's knowledge or authorization.

73.     Defendants' falsification, removal and/or alteration of said copyright management information was done by Defendants intentionally, knowingly, and with the intent to induce, enable, facilitate, or conceal Defendants' infringement of the London Photograph. Defendants also knew, or had reason to know, that such

removal, falsification, and/or alteration of copyright management information would induce, enable, facilitate, or conceal Defendants' infringement.

74.     Plaintiff has sustained significant injury and monetary damages as a result of Defendants' wrongful acts as hereinabove alleged in an amount to be proven.

75.     In the alternative, Plaintiff may elect to recover statutory damages pursuant to 17 U.S.C. § 1203(c)(3) in a sum of not more than $25,000 from each Defendant for each violation of 17 U.S.C. § 1202.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

- For a finding that Defendants infringed Plaintiff's copyright interest in the London Photograph by copying, displaying, and distributing it without a license or consent;

- For an award of actual damages and disgorgement of all of profits attributable to the infringement as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against each Defendant in an amount up to $150,000.00 for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

- For statutory damages in an amount up to $25,000 for each falsification or removal of copyright management information pursuant to 17 U.S.C. § 1202;

- For an injunction preventing each Defendant from further infringement of all copyrighted works of the Plaintiff pursuant to 17 U.S.C. § 502;

- For costs of litigation and reasonable attorney's fees against each Defendant pursuant to 17 U.S.C. § 505;

- For pre judgment interest as permitted by law; and

- For any other relief the Court deems just and proper.

Dated:          May 25, 2021                    Respectfully submitted,

**/s/ Hany Gonzalez**
Hany Gonzalez, Esq.
Cal. Bar No. 335677
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8358
(714) 597-6559 facsimile
*Attorney for Plaintiff*